UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 16-10320-PBS |
| JAMES GIANNETTA, | |
| Defendant | |

**OPPOSITION TO DEFENDANT GIANNETTA'S MOTION FOR RELEASE PENDING SENTENCING**

## I.      INTRODUCTION

Almost thirty years ago, and in connection with Defendant James Giannetta's prior federal felony drug trafficking offenses, United States Chief District Judge Gene Carter, District of Maine, criticized the government for relying on Giannetta and trusting his good word:  "The prosecutors should also have learned by now that they invariably end up the hapless dupes of this Defendant's manipulative skills and superior intelligence, and they should pass on to prey less dangerous to their reputations for sober thought."  *United States v. Giannetta*, 785 F. Supp. 13, 16 (D. Me. 1992).  In that case, Judge Carter warned that Giannetta's blandishments of sorrow and repentance were not premised upon any sense of true acceptance of responsibility:

> The Court is morally certain that the cooperative conduct reflected in the presentation most recently made to the Court is not motivated by any sense of genuine remorse for Defendant's past behavior or any desire to atone for past wrongful acts.  He remains, in the view of the Court, as unreconstructed as when the Court last appraised his capacity for responsible, law-abiding conduct.

*Id.* at 15.

Despite a statute designed to require mandatory detention in these circumstances, Giannetta now asks this Court to stretch the law and rely on his word to provide a privilege of release that is rarely supposed to be granted.  Such a privilege is not warranted here, particularly given the defendant's lengthy and repeated history of engaging in criminal activities.  *See Giannetta,* 785 F. Supp. at 16 (warning that Giannetta "will almost certain revert to criminal conduct on his release from … incarceration unless significant progress is made in his rehabilitation").  Giannetta has had more than two years to get his affairs in order.  He should now be ordered detained.

## II.    PROCEDURAL POSTURE AND LEGAL STANDARD

Giannetta pled guilty to violating to various offenses, including violations of 21 U.S.C. §§ 846, 841(b)(1)(A) (Count One), and 21 U.S.C. § 841(a)(1), 841(b)(1)(A) (Count Seven), both of which are Controlled Substances Act offenses having a maximum sentence of life imprisonment.  As a result, his release pending sentencing is governed by 18 U.S.C. § 3143(a)(2).  Section 3143(a)(2) provides that:

> (2)  The judicial officer *shall* order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence *be detained unless* –

> > (A)(i)  the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

> > (ii)  an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; *and*

> > (B)  the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2) (emphasis added).

2

Here, the exceptions to § 3143(a)(2) are not applicable – *i.e.,* Giannetta is not challenging his conviction and the Government is not recommending a non-incarcerative sentence.  (To the contrary, Giannetta is facing a mandatory minimum term of incarceration of at least ten years in prison.)  As result, § 3143(a) requires mandatory detention of the defendant absent the presence of "exceptional reasons." *United States v. Oake*, 2012 WL 910263, at *1-*2 (D. Mass., Mar. 15, 2012) (Gorton, J.); *see, e.g., United States v. Lopez,* 184 F. Supp.3d 1139, 2016 WL 3124629, *3-*8 (D.N.M. Apr. 21, 2016); *United States v. Tobacco,* 150 F.Supp.3d 1051, 1053-54 (D.S.D. 2015); *but see United States v. Correia,* 17 F. Supp.3d 125, 126-27 (D. Mass. 2014) (Collings, M.J.) (concluding that only the court of appeals, and not the district court, may consider "exceptional circumstances" to justify pre-sentencing release of a defendant for whom § 3143(a)(2) is applicable).

"Exceptional circumstances," in this context, are limited to that "unique combination of circumstances giving rise to situations that are out of the ordinary," *United States v. Weiner*, 1992 WL 180697, at *1–3 (1st Cir. 1992) (unpublished) (quoting *United States v. DiSomma*, 951 F.2d 494, 497 (2nd Cir. 1991)), which are "uncommon or rare," *United States v. Brown*, 368 F.3d 992, 993 (8th Cir. 2004) (per curiam).  Indeed, anything less "would seem at odds with Congress' purpose in enacting the mandatory-detention provision in 18 U.S.C. § 3143(a)(2)." *Weiner*, 1992 WL 180697, at *3.  No set of circumstances categorically qualifies as exceptional; rather, "[c]ourts have agreed that a case by case evaluation is essential" to this inquiry.  *United States v. Wages*, 271 Fed. App'x 726, 727 (10th Cir. 2008) (per curiam) (quotation omitted).

## III.    ARGUMENT

Giannetta's circumstances are not exceptional within the meaning of the statutory framework discussed above.  Giannetta first maintains that release is warranted because he needs

time to arrange for the care of his elderly parents.  Giannetta, who confessed to his involvement

in the charged crimes during the search of his residence in September 2016 and who was indicted

in November 2016 has had more than ample time to get his affairs in order and arrange for the

care of his elderly parents.  The Court recognized as much at Giannetta's change of plea hearing

that family circumstances are highly unlikely to be so exceptional to allow him continued release

in the face of the mandatory detention statute.  *See February 14, 2019 Transcript of Change of

Plea Hearing,* at 45 ("I'm not sure I will keep him on the streets if it's just a question of his

parents because he has siblings and there are other options here.").  The Court went so far as to

strongly suggest that Giannetta arrange his family affairs within the time provided by the Court

so that his parents would be cared for.  *See id.* at 55 ("The key thing is, for the next period of

time, is to figure out what happens with his parents. Ms. Griffin, I just want to make sure.  The

key thing is to figure out what happens in the next three or four weeks with his parents.").

Rather than take those steps, Giannetta appears to have done nothing, in an attempt to make

himself appear indispensable and not subject to imprisonment prior to sentencing.  This attempt

must fail; family hardship, without more, is not an exceptional circumstance for a defendant

convicted of felony charges.  *See, e.g., United States v. Burnett*, 76 F.Supp.2d 846, 849-50 (E.D.

Tenn. 1999) (holding that "family hardship" is not an "exceptional reason" justifying release for

a defendant convicted of drug trafficking crimes); *United States v. Hanhardt*, 173 F.Supp.2d 801,

807 (N.D. Ill. 2001) (denying pre-sentencing release for a defendant who argued he needed

"additional time to 'transition' his family's affairs to his wife's responsibility").  The potential

burden placed on Giannetta's family by incarceration is not "out of the ordinary" for defendants

convicted of drug trafficking crimes. *See Burnett*, 76 F.Supp.2d at 849.  And in any case,

Giannetta's parents will not have to bear that burden alone: at his plea hearing, Giannetta

acknowledged that he has multiple siblings who would be able to aid in their parents' care.

Second, Giannetta's assertion that his medical condition warrants pre-sentencing release

falls similarly flat.  While courts will countenance pre-sentencing release for some "short-term

medical emergenc[ies] requiring special treatment," *Oake*, 2012 WL 910263, at *2, non-

emergent conditions like Giannetta's do not qualify as exceptional.  *See, e.g., United States v.

Bloomer*, 791 F.Supp. 100, 102 (D. Vt. 1992) (denying pre-sentencing release for a

methamphetamine defendant suffering from Bell's palsy).  Here, Giannetta attempts to rely on a

variety of medical conditions, including scheduled dental work and other matters, to establish

extraordinary circumstances.  This is insufficient.  *See, e.g., United States v. Mellies*, 496

F.Supp.2d 930, 936 (M.D. Tenn. 2007) (denying pre-sentencing release for a defendant who

began an invasive dental procedure shortly prior to his criminal trial, noting that "[w]hile

medical necessity may have demanded such a course of action, the defendant certainly knew that

. . . he might be convicted.").  To the extent that Giannetta requires medical treatment while in

custody, the institution where he will be held (and the Marshals Service if necessary) can make

the necessary arrangements for such treatment.

The government received Giannetta's sealed filing on Tuesday, March 12, 2019.  That

evening, the government sent counsel for Giannetta HIPAA waivers that would allow the

government to independently verify the records submitted by Giannetta, both for authenticity and

completeness.  Given Giannetta's history of deception, such verification is crucial.  *Cf.

Giannetta,* 785 F. Supp. at 13-16 (characterizing Giannetta as having "manipulative skills and

superior intelligence" which, combined with "his arrogance and unbridled sense of self-interest"

and "contemptuous disrespect of the law," leads him to engage in "self-serving, opportunistic

conduct by which he has continuously baited the most gullible members of the law enforcement community"). As of this filing, Giannetta has not signed the HIPAA Waivers.

In any event, the records submitted by Giannetta under seal raise questions. For example, Giannetta is not scheduled for deep brain stimulation surgery as a result of his essential tremors. Rather, he is seeking "another opinion" to be considered for that surgery. It is unclear how many opinions he has sought; the medical report states that Giannetta has sought treatment for this condition at multiple hospitals, including Mass General, Beth Israel, and Brigham and Women's Hospital. Similarly, it is not clear whether he is being forthcoming with his physician about his social history; it appears that Giannetta denied social drug use despite a long history with methamphetamine and omitted the possibility of an upcoming term of incarceration from the discussion. Given that the surgery sought by Giannetta appears to require regular treatment from a qualified physician, it may be that Giannetta omitted this information to make it more likely that he would be selected for the treatment. To be clear, the government does not dispute that Giannetta has numerous serious health conditions. But he had many if not all of those conditions throughout the charged conspiracy and none of them supply exceptional circumstances.

Regardless, neither Giannetta's medical condition alone, nor in combination with his purported family hardship, rise to the level of "exceptional circumstances" warranting pre-sentencing release. *See Bloomer*, 791 F.Supp. at 102 (denying release where both family hardship and medical condition were asserted); *United States v. Perez*, 1998 WL 386484, at *1 (D. Conn. June 10, 1998) ("Personal circumstances such as family obligations and medical conditions do not constitute exceptional reasons"). Family and medical complications arising from incarceration, though unfortunate, do not make Giannetta unique. On the contrary, Giannetta's problems are "similar in gravity [to] . . . [and] attend most instances in which a

defendant's detention is at issue." *Bloomer*, 791 F.Supp. at 102.  To make an exception for

Giannetta here would thus be to treat "defendants committing the same [drug trafficking]

offenses . . . disparately for reasons unrelated to their crimes or personal character." *Burnett*, 76

F.Supp.2d at 850.  Giannetta "may not have expected mandatory detention upon conviction, but

the law requires it in this case, subject to a finding of exceptional reasons under § 3145(c)."

*Mellies*, 496 F.Supp.2d at 936.  Because Giannetta has pointed to no exceptional circumstances

that would warrant his pre-sentencing release, the law requires his detention.

## IV.    CONCLUSION

Neither Giannetta's family circumstances nor his medical condition constitute

exceptional circumstances warranting his continued release pending sentencing.  The Court

should order that the defendant be detained.

<div style="margin-left: 50%;">

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:  /s/ Jared C. Dolan
     JAMES E. ARNOLD
     JARED C. DOLAN
     Assistant United States Attorneys

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

　　　　　　　　　　　　　　 /s/ Jared C. Dolan
　　　　　　　　　　　　　　JARED C. DOLAN
　　　　　　　　　　　　　　Assistant United States Attorney

Date: March 13, 2019