# EXHIBIT THREE

# COPY OF TRANSCRIPT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

BE IT REMEMBERED THAT on the 17th day of December, 2018, the enclosed proceedings were held before the Honorable Daniel D. Crabtree, District Judge:

### SENTENCING HEARING

### APPEARANCES

**FOR THE UNITED STATES OF AMERICA:**

Mr. Gregory Hough

Assistant U.S. Attorney

444 Southeast Quincy, Suite 290

Topeka, KS   66683

**FOR THE DEFENDANT:**

Mr. Kirk C. Redmond

Asst. Federal Public Defender

117 SW 6th Street, Suite 200

Topeka, KS   66603



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Complex Litigation

800 E 1st Street
Wichita, KS 67202
316.201.1612

511 SW 21st Street
Topeka, KS 66604
785.273.3063

6420 W. 95th Street
Overland Park, KS 66212
913.383.1131

www.AppinoBiggs.com

1        **THE COURT:**  We are on the record in Case

2   No. 17-40121.  This case is captioned the United

3   States of America against Salvador Rodriguez-

4   Chavarria.

5       Your appearances please, beginning with the

6   United States.

7        **MR. HOUGH:**  May it please the Court, Your

8   Honor, the government appears through Assistant

9   United States Attorney, Greg Hough.

10        **THE COURT:**  Good morning, Mr. Hough.  And

11   for Mr. Rodriguez-Chavarria.

12        **MR. REDMOND:**  Good morning, Your Honor.

13   Salvador Rodriguez appears personally and with

14   counsel, Curtis Redmond.

15        **THE COURT:**  Good morning, Mr. Redmond and

16   Mr. Rodriguez.  I have this in my notes, Rodriguez

17   is the name that is appropriate to use, correct,

18   not both names?

19        **THE DEFENDANT:**  Yes, sir.

20        **THE COURT:**  Okay, thank you.  This is

21   noticed as a sentencing hearing in a case --

22   actually, it's a continuation of a sentencing

23   hearing I began some time ago on August 21st.  I,

24   at that time, and I do want to confirm the

25   parties' agreement that we've done some essential



3

1   pieces of a sentencing hearing to make sure that I

2   don't leave anything out or anything you think

3   needs to be done out.

4       At this August 21st, I reviewed the subjects

5   in Rule 32(i) confirming that the defendant

6   personally had reviewed the presentence report, as

7   had counsel. I confirmed that there were no

8   objections to the presentence report. I heard --

9   actually, I read what was identified as Mr.

10  Rodriguez's allocution that had been submitted in

11  written form, and then I heard argument from

12  counsel on the subjects that are discussed in the

13  party's various sentencing memorandum.

14      I adjourned that hearing at that point

15  because I thought the defendant had presented

16  substantial arguments and they deserved a more

17  substantial response than I was prepared to

18  provide on that date.

19      Since that hearing adjourned, I've reread

20  everything. I have done some of my own research

21  and come to a tentative decision about the

22  sentence that is sufficient, but not greater than

23  necessary.

24      Before I share that tentative sentence here,

25  let me stop and check signals with counsel and



800 E. 1st Street, Suite 305
Wichita, KS 67202
316-201-1612

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street, Suite 101
Overland Park, KS 66212
913-383-1131

4

1    make sure you agree with my understanding of the

2    record.  Mr. Hough?

3        **MR. HOUGH:**  Judge, that is my

4    understanding of the status of this matter.

5        **THE COURT:**  Mr. Redmond?

6        **MR. REDMOND:**  Yes, Your Honor.  There is

7    two things that have occurred between then and now

8    that would be appropriate for me to add.

9        **THE COURT:**  All right.

10       **MR. REDMOND:**  Number one, Mr. Rodriguez

11   appears here today in yellow.  I know the Court

12   knows what that means.  He's --

13       **THE COURT:**  I know it means not CCA, but

14   I'm not sure.

15       **MR. REDMOND:**  He's still in CCA.  He's in

16   administrative segregation.  The reason why he is,

17   is because he was attacked and hospitalized.  I

18   just didn't want the Court to draw any adverse

19   inferences regarding Mr. Rodriguez based on that.

20   He is someone that doesn't have a lot of

21   experience in jail and was beaten fairly badly.

22       The -- related to that, we would also change

23   the recommendation that we asked the Court to

24   impose from -- or to the FCI Greenville in

25   Illinois, which has a dog training program.



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                  Topeka, KS 66604           Overland Park, KS 66212
316-201-1612                       785-273-3063               913-383-1131
                                   www.appinobiggs.com

5

1    Salvador's interested in that.  It's also, in my

2    experience, a quiet yard where he's least likely

3    to have these kinds of problems.

4         **THE COURT:**  All right, thank you.  I'm

5    sorry, I didn't understand the significance of the

6    color.  I'm glad you -- of the clothing he's

7    wearing, so thank you for explaining that.  I'm

8    terribly sorry to hear about that experience.

9         So, is there anything new that the parties

10   wish to say today in support of the positions that

11   they have articulated in their sentencing

12   memoranda?  I'm not suggesting that there ought to

13   be, but simply if there is, to give you a chance

14   to say it.

15        **MR. HOUGH:**  No, Judge.  Our position is

16   firm.  One thing, in looking through and thinking

17   about this, you know, the presentence report came

18   out at 151 to 188.  We have a (c)(1)(C) to not

19   more than 108.  And even if you thought that this

20   case merited some type of a departure or variance,

21   in spite of the fact the presentence report says

22   there is none, that 108 would be appropriate.

23        **THE COURT:**  And that was actually the

24   place I was going to comment on.  As long as you

25   have referenced it and you're on your feet, let me



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604           Overland Park, KS 66212
316-201-1612                        785-273-3063               913-383-1131
                                    www.appinobiggs.com

1    ask about it because I don't think I asked this

2    question of the government back in August.

3         The sentence proposed by the binding plea

4    agreement is a below guidelines sentence, and I

5    don't think I ever asked the question directly.

6    What -- I guess I never called on you to make a

7    record of what the reason is for a below

8    guidelines sentence in the case and to hear

9    whether that's a departure or a variance or some

10   combination.

11        **MR. HOUGH:**  Judge, we allowed a plea to a

12   charge of no mandatory minimum and a cap of 120

13   months with a pretty good understanding that this

14   case would come out higher.  There were technical

15   reasons related to the investigation and things

16   that we chose not to disclose identities of

17   informants and things.

18        **THE COURT:**  Okay.

19        **MR. HOUGH:**  And in return for that, we

20   agreed to a charge of a lesser sentence, in spite

21   of the fact that the offense conduct merited a

22   greater sentence.

23        **THE COURT:**  Okay.  All right, thank you

24   for that explanation.

25        And just to round out the defendant's


Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305          5111 SW 21st Street          6420 W. 95th Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604             Overland Park, KS 66212
316-201-1612                          785-273-3063                 913-383-1131
                                      www.appinobiggs.com

7

1    position in the case, Mr. Rodriguez argues that a

2    combination of reasons warrant both a departure

3    and a variance and requests a sentence of 70

4    months.

5         Counsel, I'm -- I'm ready to provide at some

6    length the reasons for the tentative sentence.    I

7    thought about writing about this, but it had

8    already taken me quite a while to get to this

9    point and I just decided that I didn't want to

10   delay it longer by the work that goes in and the

11   sort of the -- kind of the high maintenance work

12   of preparing a sentencing, when I thought I could

13   express it to you equally well in person.    It will

14   go on for a while, I'll tell you, but I do want

15   the record to reflect sort of my thinking and give

16   the parties a chance to see that, not only for

17   purposes of Mr. Rodriguez's sentencing decision in

18   the case, but what it reflects about my approach

19   to sentencing in general.

20        So with that, I'll go ahead and share the

21   custody component of the tentative sentence, and

22   that is for the binding plea amount of 180 months

23   -- 108 months, I'm sorry.

24        I'll start by talking kind of in the sequence

25   that the defendant presents his arguments.    And



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305          5111 SW 21st Street          6420 W. 95th Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604              Overland Park, KS 66212
316-201-1612                          785-273-3063                  913-383-1131
                                      www.appinobiggs.com

1    let me say, it's a very interesting sentencing

2    argument that the defendant makes.  It's very well

3    presented and crafted.  In the end, it wasn't

4    persuasive to me, and let me explain why.

5        In Part 1 of Mr. Rodriguez's sentencing

6    memorandum, Document 71, pages 1 through 4 of that

7    document, Mr. Rodriguez made arguments about the

8    criminal history conclusion, the Strong and the

9    presentence report.  His argument points out that

10    his criminal history scores a seven points, and

11    this is the lowest rung for a criminal history

12    Category 4.  The defendant argues that the

13    conviction that puts him on that lowest rung of a

14    4 is a 2012 conviction for driving without a

15    license.  And Mr. Rodriguez correctly points out

16    that under guidelines Section 4A1.2, Subpart

17    (c)(1), he receives one criminal history -- or he

18    receives a criminal history point for that driving

19    without a license conviction only if he was

20    sentenced to a probation sentence of greater than

21    one year, or a prison sentence greater than 30

22    days, or a third alternative that does not apply

23    here.

24        Mr. Rodriguez's conviction in paragraph 50

25    adds one point because he was sentenced to two



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305
Wichita, KS 67202
316-201-1612

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street, Suite 101
Overland Park, KS 66212
913-383-1131

9

1    years probation for driving without a license.

2    Without that single point history, a criminal

3    history category would be a Category 3.

4        Mr. Rodriguez's argument has some appeal.  It

5    is a probation sentence, and it does have a

6    substantial effect as a Category 4.  The bottom of

7    the guideline range is 151 months as a Category 3.

8    The bottom of that range is 135 months.  So it's a

9    16-month difference on this one criminal history

10   point.  It seems like a lot because, as the

11   defendant argues, it's just a driving without a

12   driver's license.

13       In the end, I did not find the defendant's

14   argument persuasive, and I had four reasons that

15   led me to that conclusion.  First, the conviction

16   in paragraph 50 is Mr. Rodriguez's third

17   conviction for driving without a license in a 24-

18   month period.  In addition, it's not his last

19   conviction for that charge.  He was convicted a

20   fourth time two years later, as paragraph 51

21   recites.

22       In this context, the heavier sentence that

23   the Topeka Municipal Court Judge imposed made

24   sense to me because when criminal behavior, even

25   of a traffic nature, is this persistent, it's



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                        785-273-3063                913-383-1131
                                    www.appinobiggs.com

1    difficult not to view it as a manifestation of

2    some indifference about the law.

3        The second reason is the defendant's argument

4    has something of an illusory characteristic to it.

5    Here's why I say that:  The one-point driving

6    without a license wouldn't matter without either

7    of the two criminal history a point -- two

8    criminal history points awarded in paragraph 52's

9    conviction for domestic battery during 2015, or

10   paragraph 53's conviction for criminal damage to

11   property in 2015.  It's something of a cherry-pick

12   to argue that the criminal history category is

13   driven by one violation of law as opposed to

14   others.

15       The third reason is this one-point change in

16   criminal history matters so much only because the

17   defendant's total offense level is so high.  That,

18   of course, the criminal offense level is high

19   because of the serious nature of the offense.  At

20   a total offense level of 32, it's a long ways down

21   to that part of the chart, and Mr. Rodriguez finds

22   himself there because of the cross-reference in

23   2K2.1 based on his possession of 234 grams of

24   methamphetamine.  But for that conduct, Mr.

25   Rodriguez's criminal history month -- or criminal



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305          5111 SW 21st Street          6420 W. 95th Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604             Overland Park, KS 66212
316-201-1612                          785-273-3063                 913-383-1131
                                      www.appinobiggs.com

11

1  history, his base offense level, rather, will be

2  14, 18 levels less.  And so the difference between

3  a 3 and a 4 would only have mattered six months.

4      My last point on the criminal history

5  argument is probably the broadest observation I

6  have about any subject I'll discuss this morning,

7  and it has concerned me several times at

8  sentencing hearings and it's -- it probably is

9  inherent in binding plea agreements that are

10 structured this way.  I can't forbid, of course,

11 the participants, the counsel in the case from

12 structuring this -- their plea agreements this

13 way, and I wouldn't even if I could, but I'm

14 bothered by plea agreements that -- and I'm not

15 sure I can say this as well as I'd like to, but

16 I'm bothered by plea agreements that abandon a

17 guideline approach to sentencing and then one or

18 more of the parties start making guideline

19 arguments to reduce the sentence that's selected

20 by the binding plea agreement.  So this mix-and-

21 match approach to sentencing doesn't appeal to me,

22 and it is not persuasive here in the specific

23 context of Mr. Rodriguez's sentencing.

24      So with that, I'll move to the second set of

25 broad-based arguments that Mr. Rodriguez makes in



Appino &amp; Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604           Overland Park, KS 66212
316-201-1612                        785-273-3063               913-383-1131
                                    www.appinobiggs.com

1   his sentencing memorandum, and that is that he

2   deserves a downward variance because the meth --

3   the methamphetamine guidelines overstate the

4   seriousness of the offense.  It's really the

5   guideline -- the methamphetamine guidelines and

6   the quantity levels that they use.

7        This argument begins on page 4 of Mr.

8   Rodriguez's sentencing memorandum, Document 27.

9   It reads -- that argument reasons that

10  methamphetamine and crack cocaine once were

11  aligned with one other under the 1998

12  Methamphetamine Trafficking Penalty Enhancement

13  Act.  But when Congress, the argument goes,

14  remediated the guidelines for crack cocaine under

15  the Fair Sentencing Act, it didn't likewise

16  ameliorate the equally harsh guidelines for

17  methamphetamine.  That's the defendant's phrasing

18  of the argument.

19       Mr. Rodriguez's memorandum goes on to explain

20  that crack cocaine is more harmful to its users

21  and society generally than methamphetamine, and,

22  thus, the Court should do what the Sentencing

23  Commission has not done; that is, the Court should

24  impose a four-level variance when it sentences Mr.

25  Rodriguez.



Appino & Biggs Reporting Service, Inc.
Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305          5111 SW 21st Street          6420 W. 95th Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604             Overland Park, KS 66212
316-201-1612                          785-273-3063                 913-383-1131
                                      www.appinobiggs.com

13

1    In the end, this argument is not persuasive

2    to me for several reasons.  First, the argument

3    starts with the premise that the guideline's Drug

4    Quantity Table in 2D1.1C always is trying to rank

5    drugs by their harmfulness.  That is, that the

6    more harmful that the United States Sentencing

7    Commission perceives a controlled substance to be,

8    the harsher the sentence its guidelines recommend,

9    including the Quantity Table which affects

10   sentencing importantly.

11     I conclude that this premise is a mistaken

12   one, and I'll stop here and explain why.  My

13   understanding on this issue is derived primarily,

14   but not exclusively, from two sources that the

15   parties cited.  First, Judge Gleason's opinion in

16   the United States against Diaz from the Eastern

17   District of New York in 2013, and then Judge

18   Browning's equally federal opinion in United

19   States against Reyes, R-E-Y-E-S, from the District

20   of New Mexico in 2014.

21     Anyone who's read those two opinions know

22   that those two judges disagree substantially and

23   they have very different views about the

24   guidelines, particularly the methamphetamine

25   guidelines value, but they do agree on several



Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604           Overland Park, KS 66212
316-201-1612                        785-273-3063               913-383-1131
                                    www.appinobiggs.com

14

1   things.   And one of those things is how the

2   quantity levels in 2D1.1 got established.   And

3   when these two judges who come to very different

4   conclusions agree on something, it's likely not

5   something that's subject to dispute.

6        Here's what the two judges say about that

7   history, and I'll use primarily Judge Gleason's

8   words to explain.   After Judge Gleason recited the

9   various options that the Sentencing Commission

10  could have used when it established the Drug

11  Quantity Table in 2D1.1, at least as that table

12  applied to heroin, crack cocaine and cocaine,

13  Judge Gleason went ahead to outline the option

14  that the Sentencing Committee actually used, and

15  here's what he said:   The United States Sentencing

16  Commission took the mandatory minimum provisions

17  in the Anti-Drug Abuse Act of 1986 and made them

18  proportionately applicable to every drug

19  trafficking offense.   In other words, the

20  guidelines incorporated the mandatory minimums

21  into the sentencing grid and then provided a

22  graduated scale of punishment for greater and

23  lesser weights.   Base offense levels for lesser

24  and greater the quantities sloped downward for

25  lesser quantities and upward for greater



Appino Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305          5111 SW 21st Street          6420 W. 95th Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604             Overland Park, KS 66212
316-201-1612                          785-273-3063                 913-383-1131
                                      www.appinobiggs.com

1   quantities accordingly.

2   Judge Browning explains this history much the

3   same way in the Reyes opinion.  I do realize, I'll

4   stop here to say, that the methamphetamine

5   quantities may have emerged in a slightly

6   different way because the Anti-Drug Abuse Act of

7   1986 did not specify a mandatory minimum penalty

8   or quantity for methamphetamine.  Instead, when

9   the quantity levels for meth were established in

10  1987, the guidelines assigned methamphetamine an

11  equivalency rate.  Meth was treated this way: 1

12  gram of methamphetamine equals 2 grams of cocaine,

13  which equal 400 grams of marijuana.

14  This changed in the Anti-Drug Abuse Act of

15  1988 when Congress, for the first time,

16  established mandatory minimum sentences and

17  quantities for methamphetamine trafficking.  It

18  set a mandatory minimum at five years for

19  possession of 10 grams of methamphetamine, or 100

20  grams of meth mixture, and at 10 years for 100

21  grams of methamphetamine to 1 kilogram of mixture.

22  The Sentencing Commission responded to this

23  congressional action by doing what it had done

24  before for other controlled substances.  It

25  incorporated those new mandatory minimums for



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305      5111 SW 21st Street      6420 W. 95th Street, Suite 101
Wichita, KS 67202                 Topeka, KS 66604          Overland Park, KS 66212
316-201-1612                      785-273-3063              913-383-1131
                                  www.appinobiggs.com

1   methamphetamine into the guideline quantities by

2   using the same proportional approach used for

3   other controlled substances.  This made offense

4   Level 26 the quantity for five years of meth

5   mixture and offense Level 32 a 10-year crime for

6   meth mixture.

7        It's worth stopping here to note that the net

8   effect of the 1988 Act, as the Commission

9   sprinkled it into the guidelines, using

10  congressionally-selected quantities as a basis for

11  guideline setting, the Sentencing Commission

12  ascribed to methamphetamine a potency about 2.5

13  times greater than that of the former law.

14       To me, what happened next is important to

15  understanding the guidelines and the quantity

16  tables.  In 1990, Congress acted yet again.  This

17  Act, the 1990 Crime Control Act, explicitly

18  instructed the Sentencing Commission to increase

19  the offense levels for ice, a kind of

20  methamphetamine, that would reach the

21  methamphetamine involved in this case by two

22  levels -- by punishing it two levels more severely

23  than meth mixture.

24       In 1996 Congress enacted another law that

25  affected methamphetamine sentencing.  That bill,



Appino & Biggs Reporting Service, Inc.
Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                        785-273-3063                913-383-1131
                                    www.appinobiggs.com

1    the 1996 Comprehensive Methamphetamine Control

2    Act, provided detailed instructions to the

3    Sentencing Commission that required increased

4    penalties for methamphetamine trafficking

5    offenses.  In other words, Congress again

6    stiffened the methamphetamine sentencing laws.

7         The Sentencing Commission responded in 1997

8    reducing by about half the quantities of meth

9    mixture that corresponded to the offense levels

10   listed in guideline Section 2D1.1's Drug Quantity

11   Table.  After those amendments to the quantity

12   levels, the guideline quantity ratio changed from

13   10 to one a meth-to-meth mixture to five to one.

14        Yet again, in 1998, in Congress's 1998

15   Methamphetamine Trafficking Penalty Enhancement

16   Act, Congress stiffened the mandatory minimums for

17   methamphetamine offenses by cutting in half the

18   quantities of meth and meth mixture necessary to

19   trigger the five and 10-year mandatory minimums.

20        This was the congressional action that made

21   meth triggering quantities equal to those of crack

22   cocaine, an outcome that sponsors of the

23   legislation explicitly have sought.  This bill

24   prompted Amendment 5 -- I'm sorry, 594 from the

25   Sentencing Commission, and this amendment regraded



Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305
Wichita, KS 67202
316-201-1612

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street, Suite 101
Overland Park, KS 66212
913-383-1131

1    the quantities used as triggers in the Quantity

2    Table, just as the Commission had done before with

3    the original guideline quantities.

4         I'll just finish this retrospective with one

5    piece of legislation, something that's discussed

6    in the defendant's sentencing memorandum.  The

7    Fair Sentencing Act of 1990, this bill, among

8    other things, reduced the mandatory minimum

9    quantities for crack cocaine.  And as Mr.

10   Rodriguez's memorandum recites, reduced the crack

11   cocaine to cocaine quantities from 100 to one to

12   18 to one.  You can take what you will from this

13   crack cocaine reduction, but it's meaningful to me

14   that Congress did not lower any of the quantities

15   for methamphetamine or instruct the Sentencing

16   Commission to do so in the guidelines.

17        So that's the backdrop that I considered.  I

18   realize it's a lot of information, maybe more than

19   you wanted, but I did want to share it with you

20   because I find two important lessons in it.

21   First, it leads me to a different conclusion than

22   Mr. Rodriguez reaches.  I think that's because I

23   start in a very different place than his argument

24   begins.

25        The defendant's argument reasons that the



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305         5111 SW 21st Street         6420 W. 95th Street, Suite 101
Wichita, KS 67202                    Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                         785-273-3063                913-383-1131
                                     www.appinobiggs.com

1    Sentencing Commission based its quantity levels on

2    its assessment of which controlled substances were

3    more harmful.  In other words, the harsher or the

4    more harmful the drug, the harsher the sentence

5    recommended by the guidelines.  And then based on

6    that premise, the defendant argues that the

7    Sentencing Commission just isn't very good at

8    gauging the relative harmfulness of various drugs,

9    at least not in a relevant sense.

10        My conclusion is that the Sentencing

11   Commission engaged in a qualitatively different

12   endeavor than the one that the defendant ascribes

13   to.  My takeaway is the Sentencing Commission

14   strove to implement the sentiments that are

15   embraced by Congress and spread proportionally

16   around the five-year and 10-year mandatory minimum

17   quantities.

18        This is the point in Judge Browning's opinion

19   in Reyes that carries the day with me.  And when

20   I'm forced to choose by my -- between my own

21   assessment of empirical data about various drugs'

22   relative harm and the judgment made by members of

23   Congress, I choose the latter.  That's consistent

24   with my view of the courts in our system of

25   government, and in particular the role that the



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305            5111 SW 21st Street            6420 W. 95th Street, Suite 101
Wichita, KS 67202                       Topeka, KS 66604               Overland Park, KS 66212
316-201-1612                            785-273-3063                   913-383-1131
                                        www.appinobiggs.com

1    courts play in that system.

2        In short, I guess I conclude that the

3    quantity levels are data driven.  They are based

4    on empirical data.  They are just based on

5    different data points than the defendant's

6    argument asks me to apply.

7        I'll close this discussion with three final

8    points.  One, I'd feel exactly the same way if the

9    shoe was on the other foot, that if it was the

10   prosecutor who was standing and saying and arguing

11   that the methamphetamine penalties are not harsh

12   enough and I should upgrade them.

13       My second big takeaway; it's much shorter.

14   When -- from this history of methamphetamine

15   sentencing, when Congress thinks that the

16   Sentencing Commission has missed the mark, for

17   whatever reason, it knows and has shown that it

18   knows how to impose its will on sentencing.  This

19   conclusion is manifested in several of the acts

20   that I discussed, including Public Law 101-647

21   where Congress directed the Sentencing Commission

22   to stiffen its treatment of ice, and it is equally

23   manifested in the Fair Sentencing Act of 2010 when

24   Congress, by its action, reduced the penalty for

25   crack cocaine.  To me, it's significant that

**Appino & Biggs** Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305
Wichita, KS 67202
316-201-1612

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street, Suite 101
Overland Park, KS 66212
913-383-1131

1    Congress has asserted itself in both directions,

2    both stiffening and lightening punishment, but

3    there is not a whisper of suggestion from the

4    Congress that it believes the Sentencing

5    Commission has missed the mark on methamphetamine

6    sentencing.

7         I've already talked with you and I'll only

8    reference it briefly here.  In Section 2.3 of the

9    defendant's memorandum, Mr. Rodriguez argues that

10   there is no need for as severe a penalty as the

11   guidelines would impose on him because severe

12   sentences haven't deterred methamphetamine sellers

13   or depressed the drug quantities availability.  As

14   I suggested to you in the first installment of

15   this sentencing hearing, I think this argument

16   overlooks the other important factors in the

17   methamphetamine marketplace, a term I hate to use.

18   These are things that one cannot question, and

19   that is the supply of methamphetamine in this

20   country is plentiful, and that supply is likely to

21   have a significant effect on a number of things.

22        Last, I'll speak briefly about the argument

23   Mr. Rodriguez makes in Section 2.4 of his

24   memorandum, and it argues that the methamphetamine

25   guideline creates an unwarranted disparity,



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305          5111 SW 21st Street          6420 W. 95th Street, Suite 101
Wichita, KS 67202                    Topeka, KS 66604             Overland Park, KS 66212
316-201-1612                         785-273-3063                 913-383-1131
                                     www.appinobiggs.com

1   pointing out that about 43 percent of the
2   methamphetamine cases in 2015 were sentenced as
3   mixture cases, 47 percents -- 47 percent of those
4   cases were sentenced as methamphetamine actual,
5   and 10 percent as ice.  And then Mr. Rodriguez
6   argues:  But there is no rhyme or reason why some
7   jurisdictions sentence in the fashion they do
8   electing to treat methamphetamine as actual
9   methamphetamine or ice or as a mixture.
10          I don't know, I'm not sure I'm in a position
11   to assess alleged disparity forum to forum.  But
12   what I do know is the experience in this district,
13   and that is that defendants are sentenced based on
14   the methamphetamine they actually possessed.
15          Here it's not disputed that the 100 -- 100
16   percent pure rate of methamphetamine was 111 grams
17   and 123 grams.  That's established in paragraph 15
18   and 20 of Mr. Rodriguez's presentence report.  So
19   there is no disparity as it applies to Mr.
20   Rodriguez.  He's being sentenced -- or at least
21   evaluated in the presentence report based on what
22   he actually possessed.
23          Counsel, that is my rationale for the custody
24   component of the tentative sentence.  I'll go
25   ahead and share with you the other components of



Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305          5111 SW 21st Street          6420 W. 95th Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604             Overland Park, KS 66212
316-201-1612                          785-273-3063                 913-383-1131
                                      www.appinobiggs.com

23

1   the sentence.  I do not believe that they are in

2   dispute or materially in dispute.

3        On the supervised release front, tentative

4   sentence is for a three-year term of supervision.

5   That is within the guideline range of one to three

6   years and also within the statutory range.  Mr.

7   Rodriguez is ineligible for probation.  It's not a

8   component of my sentence.  No fine is imposed,

9   given the content of the presentence report, nor

10  is there a restitution obligation.  Mr. Rodriguez

11  will owe a $100 special assessment.

12       I've explained at some length my

13  justification.  I'll just close that to say that I

14  have considered the sentencing guidelines at some

15  length, probably a greater length than I ever have

16  before.  I do believe those guidelines do promote

17  a uniform approach to sentencing.  I believe they

18  do help courts determine an appropriate sentence

19  beginning with guideline findings and then also

20  guiding the Court -- sentencing Court's

21  consideration of the nature of the offense, as

22  well as any aggravating and mitigating factors

23  that are presented by a particular sentencing

24  decision.

25       In terms of sort of other collateral



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                        785-273-3063                913-383-1131
                                    www.appinobiggs.com

1    components of the sentencing decision, I do intend

2    to enter the forfeiture of property outlined in

3    the preliminary order of forfeiture that was filed

4    with the Court on April 24th of this year.  The

5    conditions of supervision will include those

6    mandatory and special conditions.  They are set

7    out in Part D of the presentence report.

8         I also conclude that the nature of the

9    offense and the history that is outlined in the

10   presentence report warrant conditions -- warrant

11   the condition that Mr. Rodriguez be surrendered to

12   a duly authorized immigration official for his

13   deportation.  If he is ordered deported, the

14   defendant shall not unlawfully enter the United

15   States.  If he is not deported, the special

16   condition for substance abuse treatment with

17   alcohol abstinence during the term of supervision

18   is appropriate.

19        In addition, to ensure compliance with Mr.

20   Rodriguez's conditions of release -- I'm sorry,

21   conditions of supervision, a condition allowing

22   search and seizure of the defendant on reasonable

23   suspicion, including his property under his

24   control, is appropriate.

25        So, counsel, there is the tentative



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                        785-273-3063                913-383-1131
                                    www.appinobiggs.com

25

1    sentencing with the rather extensive

2    justification.  I'll hear from you one last time

3    with any additional comments.  Mr. Hough?

4         **MR. HOUGH:**  We have nothing further, Your

5    Honor.

6         **THE COURT:**  Mr. Redmond?

7         **MR. REDMOND:**  We made our position known,

8    Your Honor.  We have nothing else.

9         **THE COURT:**  Can you remind me, it's

10   Greenville?

11        **MR. REDMOND:**  Yes, sir, and the dog

12   training program.

13        **THE COURT:**  Mr. Rodriguez, can I ask you

14   to stand and I'll impose the sentence at this

15   time.

16       The Court determines that the presentence

17   investigation report and the findings I stated

18   earlier are accurate.  I order those findings

19   incorporated into this sentence.

20       Under the Sentencing Reform Act of 1984, it

21   is the Court's judgment that the defendant,

22   Salvador Rodri -- Salvador Rodriguez-Chavarria is

23   hereby sentenced to the custody of the Bureau of

24   Prisons for a term of 108 months on Count 3 of the

25   indictment.  This term in prison will be followed



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305
Wichita, KS 67202
316-201-1612

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street, Suite 101
Overland Park, KS 66212
913-383-1131

1    by three years of supervised release.   Then 72

2    hours after release from custody by the Bureau of

3    Prisons, Mr. Rodriguez, you must report to the

4    United States Probation Office in the judicial

5    district where you are released, unless you are

6    first deported.

7        While you are on supervised release, you must

8    comply with the mandatory and standard conditions

9    this Court has adopted and the special conditions

10   of supervision as set out in Part D of your

11   presentence report.

12       The defendant is ordered to pay to the United

13   States a special assessment of $100 payable to the

14   Crime Victims Fund under federal statute.   Payment

15   of this assessment is due immediately, but it is

16   an obligation the defendant may satisfy while in

17   the custody of the Bureau of Prisons.   No fine is

18   imposed.

19       The preliminary order of forfeiture is made

20   final as it applies to Mr. Rodriguez and it will

21   be incorporated in the judgment.

22       Both the government and defendant are advised

23   of their respective rights to appeal this sentence

24   and the conviction that led to it.   Any appeal

25   taken from the sentence is subject to 18 United



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                        785-273-3063                913-383-1131
                                    www.appinobiggs.com

27

1   States Code Section 3742 and subject to any waiver

2   contained in the parties' plea agreement in this

3   case.

4        Mr. Rodriguez, you are advised it is your

5   right to appeal your conviction and sentence, but

6   only to the extent you have not waived that right

7   in the plea agreement.  You can lose your right to

8   appeal, whatever it is, if you fail to file a

9   timely notice of appeal in the District Court.

10  Under Rule 4B of the Federal Rules of Appellate

11  Procedure, you have 14 days after judgment is

12  entered to file your notice of appeal.  If you so

13  request, the Clerk of our court will prepare and

14  immediately file a notice of appeal on your

15  behalf.  If you're not able to pay the costs of an

16  appeal, you do have the right to apply for leave

17  to appeal in forma pauperis.

18       At the end of this hearing, Mr. Rodriguez

19  will be remanded to the custody of the Marshals

20  Service pending his designation by the Bureau of

21  Prisons.

22       Mr. Rodriguez, I will recommend to the Bureau

23  of Prisons a designation to the facility at

24  Greenville, Illinois, with participation in the

25  dog training program offered there.  You need to



Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                        785-273-3063                913-383-1131
                                    www.appinobiggs.com

1  know that that is not binding on the Bureau of

2  Prisons, but I will make it and I do believe they

3  will consider it.

4      Mr. Hough, are there charges in the

5  Indictment or other charging documents that are

6  subject to dismissal?

7      **MR. HOUGH:**  Your Honor, at this time,

8  pursuant to the plea agreement, we would move to

9  dismiss Counts 1 and 2.

10     **THE COURT:**  Without objection, Counts 1

11  and 2 are dismissed.

12     Counsel, is there anything else we ought to

13  take up before we close today's sentencing

14  hearing?  Anything else to take up, Your Honor --

15  I'm sorry, Mr. Hough?

16     **MR. HOUGH:**  Your Honor, we have nothing

17  further.  We would encourage the Court, for what

18  it's worth, to enter a written order following

19  this up.  I think the Court's analysis and

20  reasoning is something that within this district

21  we will have to revisit, and other courts in this

22  district in particular would find the Court's

23  reasoning and analysis helpful.

24     **THE COURT:**  I'll consider it.  I

25  considered it before.  If I think -- if I -- if I



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604           Overland Park, KS 66212
316-201-1612                        785-273-3063               913-383-1131
                                    www.appinobiggs.com

29

1    think I can do it right, I'll do it.  If not, what

2    I said today will have to do, but I appreciate the

3    suggestion and I'll look back at it.

4             **MR. HOUGH:**  Thank you.

5             **THE COURT:**  Mr. Redmond?

6             **MR. REDMOND:**  The Court will receive a

7    transcript request from our office anyway, so I

8    think it will be out there.  In any case, we have

9    nothing further.

10            **THE COURT:**  Thank you very much.  We will

11   go ahead and close the record.

12            (THEREUPON, the hearing concluded at

13   9:57 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25



Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305          5111 SW 21st Street          6420 W. 95th Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604             Overland Park, KS 66212
316-201-1612                          785-273-3063                 913-383-1131
                                      www.appinobiggs.com

30

# CERTIFICATE

**STATE OF KANSAS**

                    **SS:**

**COUNTY OF SHAWNEE**

I, Lora J. Appino, a Certified Court Reporter, Commissioned as such by the Supreme Court of the State of Kansas, and authorized to take depositions and administer oaths within said State pursuant to K.S.A. 60-228, certify that the foregoing was reported by stenographic means, which matter was held on the date, and the time and place set out on the title page hereof and that the foregoing constitutes a true and accurate transcript of the same.

I further certify that I am not related to any of the parties, nor am I an employee of or related to any of the attorneys representing the parties, and I have no financial interest in the outcome of this matter.

Given under my hand and seal this 3rd day of January, 2019.



_Lora J. Appino_

Lora J. Appino, C.C.R. No. 0602

Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305
Wichita, KS 67202
316-201-1612

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street, Suite 101
Overland Park, KS 66212
913-383-1131